STATE OF WISCONSIN, CIRCUIT COURT, __WAUSHARA__ COUNTY

| | For Official Use |
|---|---|

Plaintiff: (Name [first, middle, last], Address, City, State, Zip)

PAUL AND DAVID OLSEN

2009 MAJESTIC PINES

WAUTOMA WI 54982

☐ See attached for additional plaintiffs.

•VS•

To: Defendant(s) : (Name [first, middle, last], Address, City, State, Zip)

AG SERVICES

W2003 HWY 21

BERLIN, WI 54923

☐ See attached for additional defendants.

If you require reasonable accommodations due to a disability to participate in the court process, please call _____ at least 10 working days prior to the scheduled court date. Please note that the court does not provide transportation.

**FILED**

JANE F. PUTSKEY

DEC 07 2010

CIRCUIT COURT
WAUSHARA CO WIS

☐ Amended

**Summons and Complaint**
**Small Claims**

Case No. 10 SC-555

☐ Claim for money ($5,000 or less) 3100
☐ Return of property (replevin) 31003
☒ Eviction
☐ Eviction due to foreclosure 31002
☐ Arbitration award 31006
☐ Return of earnest money 31008

## SUMMONS

**To the Defendant(s):**

You are being sued as described below. If you wish to dispute this matter:

☒ You must appear at the time and place stated.

**AND/OR** (Clerk will circle one)

☐ You must file a written answer and provide a copy to the plaintiff or plaintiff's attorney on or before the date and time stated.

If you do not appear or answer, the plaintiff may win this case and a judgment entered for what the plaintiff is asking.

| When to Appear/File an Answer | |
|---|---|
| Date TO BE DETERMINED | Time |
| **Place to Appear/File an Answer** | |
| WAUSHARA COUNTY COURTHOUSE 209 ST. MARIE STREET WAUTOMA, WI 54982 | |

| Clerk/Attorney Signature | Date Summons Issued | Date Summons Mailed |
|---|---|---|
| | 12-15-10 | |

## COMPLAINT

**Plaintiff's Demand:**

The plaintiff states the following claim against the defendant(s):

1. Plaintiff demands judgment for: (Check as appropriate)

☐ Claim for Money $ _____
☐ Return of Earnest Money
☐ Return of property (replevin) (Describe property in 2 below.) (Not to include Wis. Stats. 425.205 actions to recover collateral.)
☒ Eviction
☐ Eviction due to foreclosure
☐ Confirmation, vacation, modification or correction of arbitration award.

Plus interest, costs, attorney fees, if any, and such other relief as the court deems proper.

2. Brief statement of dates and facts: (If this is an eviction action and you are seeking money damages, you must also state that claim on this form.)
Defendants were properly served a 14-Day Notice Terminating Tenancy. We would ask for the eviction to be granted along with court costs and attorney fees incurred in bringing this action.

☒ See attached for additional information. Provide copy of attachments for court and defendant(s).

**Verification:** Under oath, I state that the above complaint is true, except as those matters stated upon information and belief, and as to those matters, I believe them to be true.

I am: ☐ plaintiff. ☒ attorney for the plaintiff.

| Subscribed and sworn to before me | Signature of Plaintiff or Attorney | Date 12/7/10 | Attorney's State Bar Number 1014654 |
|---|---|---|---|
| On December 7, 2010 | Plaintiff/Attorney's Telephone Number 920-361-4100 | Law Firm and Address | |
| Notary Public, State of Wisconsin My commission expires: 07-24-11 | | SELSING LAW OFFICE 120 EAST HURON STREET BERLIN WI 54923 | |

**EXHIBIT A**

SC-500, 10/09 Summons and Complaint – Small Claims
This form shall not be modified. It may be supplemented with additional material.

Chapter 799, Wisconsin Statutes

## 14 DAY
## Notice Terminating Tenancy
## for Breach of Lease

To __AG SERVICES OF WISCONSIN LLC__

**State of Wisconsin,**

__W2003 HWY 21__

GREEN LAKE _____ County.

__BERLIN, WI  54923__
ATTN:  PHILLIP MARTINI

This notice terminates your tenancy and requires you, and anyone living with you, to vacate the premises listed above on or before __December 1_____ , 20 _10_ .

You are in breach of your lease for the following reason/s: __Non-payment of rent.__

__You are to vacate office located at the above address.__

If you have not vacated the premises by the date listed above the owner may start an eviction action against you pursuant to chapter 799 of the Wisconsin Statutes.

**DOUBLE RENT:** Pursuant to §704.27, Wis. Stats. an owner can recover as damages against a tenant, a **minimum of twice the daily rent amount,** if the tenant remains in possession of the premises after the expiration of this notice.

Date: __11/17/10__

_____
Owner / Agent of Owner
John B. Selsing, Attorney for
Paul Olsen & David Olsen

**When To Use:**
(1) Month-to-month tenancy where tenant has breached lease for something other than non-payment of rent
(2) Tenancy for 1 year or less where tenant has breached lease for something other than non-payment of rent  for a 2nd time within a 12 month period.

2/19/03 - Drafted by Attorney Tristan R. Pettit & Thomas Frenn of Petrie & Stocking S.C.
© 2003 Wisconsin Legal Blank Co., Inc.

**STATE OF WISCONSIN, CIRCUIT COURT,** <u>WAUSHARA COUNTY</u> **COUNTY** | *For Official Use*

Plaintiff /
Petitioner: <u>PAUL AND DAVID OLSEN</u>

-vs-

**Affidavit of Nonmilitary
Service**

Defendant /
Respondent: <u>AG SERVICES</u>

Case No. _____

<u>JOHN B. SELSING</u> , being first duly sworn on oath, says that:
<sub>Plaintiff/Petitioner or Plaintiff's/Petitioner's Attorney</sub>

1. I am the ☐ plaintiff/petitioner or ☒ plaintiff's/petitioner's attorney in this case.

2. This affidavit is made for the purpose of obtaining a default judgment against the above named defendant/respondent.

3. I believe the defendant/respondent is not on active military duty at this time because (choose one):

   ☐ I know the defendant/respondent personally and s/he has never given any indication that s/he is in service with the United States military or National Guard.

   ☐ I contacted the defendant/respondent, who informed me on (date) _____ that s/he is not on active duty at this time.

   ☐ I see the defendant/respondent regularly and therefore believe s/he is not on active duty at this time.

   ☒ Other personal knowledge: <u>The defedant is a business and not an individual.</u>

☐ 4. I checked the United States Department of Defense website and obtained a certificate showing that the defendant/respondent ☐ **is** ☐ **is not** on active duty status. This certificate is attached.

☐ 5. I have attempted to determine military status but do not have sufficient information. I have no reason to believe s/he is on active duty at this time.

Subscribed and sworn to before me

on <u>December 7, 2010</u>

_____
Notary Public, State of Wisconsin

My commission expires: <u>07-24-11</u>

⇨ _____
Plaintiff/Petitioner (Do not sign until you are under oath)

<u>JOHN B SELSING</u>
Name Printed or Typed of Plaintiff/Petitioner

⇨ _____
Plaintiff's/Petitioner's Attorney

_____
Name Printed or Typed of Plaintiff's/Petitioner's Attorney

<u>12/7/10</u>
Date

GF-175, 08/08 Affidavit of Nonmilitary

50 USC App Section 521 and §806.19, Wisconsin Statutes

**This form shall not be modified. It may be supplemented with additional material.**

STATE OF WISCONSIN      CIRCUIT COURT      GREEN LAKE COUNTY

BNP PARIBAS, as Agent

    Plaintiff,

                              **FILED**

v.                      Case No.  09CV25    APR **2 7** 2009

OLSEN'S MILL, INC.,                       SUSAN J. KRUEGER
                                                  Clerk of Circuit Court
    Defendant.                           GREEN LAKE COUNTY, WISC.

### ORDER APPROVING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES WITH ALL LIENS, CLAIMS AND ENCUMBRANCES ATTACHING TO THE PROCEEDS OF SALE AND AUTHORIZING THE DISBURSEMENT OF THE SALE PROCEEDS

Upon consideration of the Receiver's Motion to Sell Certain Assets of Olsen's Mill, Inc. and for Authority to Disburse the Sale Proceeds (the "Sale Motion"), and all other pleadings and orders on file herein; and the Court having held a hearing on April 8, 2009, April 14, 2009 for approval of the Sale Motion, and April 27, 2009 to clarify the Court's order; and the Court having determined that due and proper notice of the Sale Motion and hearing on the Sale Motion was provided to all employees, creditors, shareholders and other parties interested in these proceedings, and to all parties who expressed an interest in acquiring the assets which are the subject of these proceedings and for the reasons stated on the record at the sale hearing, the Court hereby makes the following Findings of Fact, Conclusions of Law and Order (Quotations are from the transcript of Court proceedings on April 14, 2009):

This is to certify that this document is a full, true and correct copy of orginal on file and of record in my office and has been compared by me.

Dated: April 27, 2009 19.

_Susan J. Krueger_
Clerk of Circuit Court, Green Lake County, Wisconsin

Deputy Clerk of Circuit Court

516144



EXHIBIT B

## FINDINGS OF FACT

1. On February 11, 2009, this Court entered an Order appointing Michael S. Polsky, Esq. as Interim Receiver of Olsen's Mill, Inc. ("Olsen's") pursuant to Chapter 128 of the Wisconsin Statutes.

2. On March 6, 2009, the Receiver filed his Motion to Sell Certain Assets of Olsen's Mill, Inc. and for Authority to Disburse the Sale Proceeds ("Motion to Sell"). The Motion sought this Court's authority to sell specific assets in accordance with Auction Terms and Procedures to be established by the Receiver with the consent of BNP Paribas, as Agent ("BNPP").

3. On April 8, 2009, the Court signed an Order Granting Receiver's Emergency Motion for an Order Expanding the Powers of the Receiver to Include the Assets of Olsen's Leasing, LLC. The assets of both Olsen's Mill, Inc. and Olsen's Leasing, LLC were included in the going concern auction on April 7, 2009 (the "Auction").

4. The Auction was conducted by the Receiver pursuant to the terms of the Amended Auction Terms and Procedures (the "Amended Auction Terms") on file herein.

5. A. The Auction began at approximately 10:10 a.m. and continued until 6:30 p.m. After five (5) rounds of bidding, the highest and best bid which the Receiver obtained was from PRM Wisconsin, LLC ("PRM") in the total amount of $18,210,000 (the "PRM Bid"). The PRM Bid is more particularly described as follows:

- The total amount of $9,000,000 for all owned inventory;

- The total amount of $6,500,000 for all owned equipment and real estate; and

- Buyer shall assume and be liable for, all legal, valid and binding obligations of Olsen's to grain producers or grain suppliers (but subject to any applicable

2

right, claim, defense or offset to such obligation) that exists on the date hereof as a result of grain deliveries made to and accepted by Olsen's which remain unpaid, which were estimated at $2,710,000.00 on the day of the Auction.

- B. Olsen's Mill Acquisition Company, LLC ("OMAC") was also a bidder at the auction and it placed the second highest bid.

- C. The PRM Bid had increased by April 14, 2009 to $19,200,000, because outstanding grain producer/supplier obligations had increased by $990,000, and PRM increased its bid accordingly.

6. The Receiver's Report of Sale submitted to this Court in connection with the Motion to Sell proposed to sell to PRM the assets of Olsen's that were the subject of the PRM Bid as the highest and best offer.

7. At the hearing on April 14, 2009, Olsen's Mill Acquisition Company, LLC ("OMAC") orally offered to purchase the assets of Olsen's that were the subject of the PRM Bid offered for sale pursuant to the Amended Auction Terms, which include the assets of Olsen's Leasing LLC, but excludes the Excluded Assets identified on Exhibit 2 of the Amended Auction Terms, as orally amended by the Receiver at the Auction (the "Subject Assets"), in exchange for the following consideration $9,000,000.00 for the inventory, $6,500,000.00 for all real estate, rolling stock, and leased and owned equipment, and other consideration in the form of a commitment to honor all checks and obligations to producers, including Little Sprout, in an amount of at least $4,974,000.00 **[p.44, lines 11-14]**, a commitment to honor all forward contracts of producers with an estimated value as of April 14, 2009 of $4,500,000.00, a commitment to honor prepaid inventory of producers of $2,500,000.00 as of April 14, 2009, and a commitment to honor all pre- and post-petition trade accounts payable estimated by OMAC to

3

be $1,500,000.00 (exclusive of BBK, Receiver fees, lenders, and Utica Energy and Renew) **[p.44, lines 20-23],**

8.     Additional terms and conditions contained in the Term Sheet attached as Exhibit A hereto, and as supplemented and modified on the record (together with paragraph 7, above, the "OMAC Offer") are as follows:

- Receiver releases and discharges Phillip J. Martini and OMAC for any and all claims he may have as a result of the Receivership.

- OMAC shall operate the business immediately.

- OMAC will assume leases for equipment used in the ordinary course of business except rail car leases.

- OMAC will offer employment to all employees on the same terms.

- Receiver shall forego any claims for preferential payments to producers. Receiver shall retain all other claims and causes of action, including avoidance actions.

- OMAC must obtain a license to operate from the State of Wisconsin, Department of Agriculture, Trade and Consumer Protection, prior to closing on April 24, 2009. **[p.81]**

- OMAC will negotiate leases with Olsen Brothers Enterprises, LLP going forward.

9.     OMAC has represented to the Court that it has conducted months of due diligence on the proposed purchase. **[TMO p.94, line 18]** and that $1,500,000 is sufficient to pay all pre- and post-petition payables, with the exception of fees for the lenders, the Receiver, BBK, Utica or Renew. **[TMO p.53, lines 17-20]**

4

10. OMAC advised the Court that it is ready, willing and able to acquire the Subject Assets in accordance with the OMAC Offer; however, the OMAC Offer was specifically conditioned on OMAC's ability to obtain the necessary licensing from the Wisconsin Department of Agriculture, Trade, and Consumer Protection on or before April 24, 2009.

11. The OMAC Offer is commercially reasonable. The sale based on OMAC's Offer is "a commercially reasonable sale in that it does enhance the result that we wouldn't have had with the original offer."

12. The aspect of the OMAC Offer (contained in paragraph 2 and as supplemented and modified on the record) providing for the payment of $9,000,000 without interest, within 180 days, to the secured lender, BNP Paribas, as Agent, ("BNPP") for inventory, is fair and reasonable. The payment to BNPP shall be evidenced by a promissory note from Phillip J. Martini to the Receiver and BNPP ("Inventory Note"), guaranteed by Phillip J. Martini, personally and secured with a first priority purchase money security interest from OMAC to the Receiver **[p.48, lines 20-22]** in the inventory. As inventory is sold, **[TMO, p.44, lines 1-3; Judge p.75, lines 11-13; Swanson p.86, lines 13-16]** BNPP will be paid the proceeds thereof without any deduction for costs of sale, with payment from proceeds to be made every two (2) weeks.

13. Based upon the testimony of the Receiver, the sale of the Subject Assets pursuant to the OMAC Offer is for an amount in excess of the liquidation value of the Subject Assets.

14. BNPP has a properly perfected security interest in certain assets of Olsen's (including equipment, real estate, inventory and general intangibles), does not consent to the OMAC Offer described above, or the sale of the Subject Assets in accordance therewith and has not agreed to release its liens and security interests on the assets described above.

5

15. Baylake Bank has a properly perfected security interest and mortgage in certain assets of Olsen's, does not consent to the OMAC Offer, or the sale of the Subject Assets in accordance therewith and has not agreed to release its liens and security interests on the assets described above.

16. Under the circumstances, the sale of the Subject Assets pursuant to the OMAC Offer is in the best interest of Olsen's creditors and accomplishes what the Court was asked to do, and that is to obtain the highest value for Olsen's Mill, maintaining its going concern status. The entire proceedings before this Court on April 8th and 14th, 2009, shall be incorporated into this Order.

17. The Court has the authority to take the actions set forth in this Order; if it did not, the entire purpose of Chapter 128 would be ignored. The Court approves the OMAC Offer instead of the PRM Bid because the Court believes "that [OMAC] will more likely be able to work with the other entities that are necessary to concentrate the assets into the operating unit that is required for [OMI] to go forward."

18. OMAC and the Receiver shall work cooperatively during any transition period to transfer ownership and responsibility for operations and to share information.

## CONCLUSIONS OF LAW

19. Any objections to the OMAC Offer and the sale of the Subject Assets in accordance therewith are hereby overruled.

20. Effective as of 4:00 p.m. Central Standard Time on April 14, 2009, OMAC shall be solely responsible for the on-going operations of Olsen's and the Subject Assets, including but not limited to, outstanding checks, liabilities to producers, payroll liability and payroll tax liability. The Receiver is relieved of all responsibility in connection with the operations of Olsen's and the administration of the Subject Assets.

6

21.    The Receiver shall continue to administer all assets of the receivership estate other than the Subject Assets, including, without limitation, accounts receivable, contract rights, cash, the tax refund owed to Olsen's, any avoidance actions and all other claims or causes of action of Olsen's or the receivership estate, including claims under Chapter 128 and 242 of the Wisconsin Statutes, except any preference actions against producers, which will not be pursued by the Receiver.

22.    The Court acknowledges that there must be sufficient resources to pay priority expenses. **[p.57]** The Court leaves to a later process, an accounting process, **[p.60, lines 24-25; p.61]** a resolution by the Court to allocate or access the administrative expenses not assumed by OMAC, recognizing that the Court is viewing the proceedings as funding the administrative expenses, as opposed to BNPP **[p.69]**.

23.    Upon closing, the sale of the Subject Assets by the Receiver to OMAC pursuant to the OMAC Offer will constitute a valid, legal and enforceable transfer to OMAC of all right, title and interest of the Receiver to the Subject Assets, free and clear of all liens, claims and encumbrances. Except for the obligations contained in the OMAC Offer, the Receiver shall release and discharge OMAC and Phillip J. Martini from any and all claims he may have against them as a result of this receivership.

24.    Nothing in this order shall limit, restrict or impair the rights, claims, causes of action or remedies of BNPP including, without limitation, those arising in and in connection with the currently pending litigation in the State of New York against the guarantors of the obligations of Olsen's to BNPP.

25.    BNPP's oral Motion for a stay of the sale to OMAC pursuant to the OMAC Offer is denied.

Case 10-39799-svk    Doc 33-1    Filed 01/21/11    Page 10 of 27

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The recommendation of sale contained in the Receiver's Report of Sale is overruled.

2. The sale of the Subject Assets to OMAC on the terms set forth in the OMAC Offer shall be consummated and closed as soon as practicable. The Receiver shall execute an Asset Purchase Agreement and closing documents, all consistent with this Order.

3. The Receiver is hereby authorized to consummate and close the sale of the Subject Assets to OMAC pursuant to the OMAC Offer and this Order upon payment of the purchase price more particularly described herein as soon as practicable.

4. The Receiver is authorized and empowered, now and in the future, to execute and deliver to OMAC any and all documents necessary to carry out the provisions of the proposed sale, including all bills of sale and deeds or other documentation as may be necessary or desirable to consummate the sale, and is further authorized to take any and all such actions and to execute any and all such other documents as will be consistent with and necessary or appropriate to implement, effectuate or consummate the sale described above without further Order of this Court.

5. Upon closing of the sale described above, all right, title and interest in and to the Subject Assets shall be vested in OMAC free and clear of all liens, claims and encumbrances. All liens, claims and encumbrances shall attach to the proceeds of sale to the same extent and priority as they existed with respect to the Subject Assets immediately prior to the closing. Copies of the description of the real property parcels affected by this Order are attached hereto and marked as Exhibits B, C, D, E and F.

8

6. OMAC is acquiring possession of warehouse facilities that are the subject of a license issued to Olsen's under the provision of the United States Warehouse Act (USWA; 7 U.S.C. Sec 241, et seq) and accordingly, OMAC shall be responsible for all of Olsen's obligations to outstanding depositors and obligation holders in store in these warehouses.

7. The ownership rights of the outstanding depositors shall be acknowledged and protected at the properties which are being acquired.

8. OMAC: (1) shall acknowledge the existence of all grain storage obligations; (2) shall allow for unrestricted access to representatives of the USDA to perform supervisory oversight of the maintenance of storage obligations; and (3) shall actively pursue an application for licensure (under either the USWA or Wisconsin Department of Agriculture) with the intent of assuming the responsibility for storage obligations or allow for the orderly liquidation of storage obligations for the benefit of outstanding depositors. Failure to obtain such licensing by April 24, 2009 shall void the OMAC Offer.

9. In the event the physical stocks of an individual location are insufficient to cover the storage obligations associated with a specific location, OMAC shall work together with the USDA to align the stocks and obligations accordingly.

10. The Receiver is authorized and directed to disburse the proceeds from the closing of the sale of the Subject Assets pursuant to the OMAC Offer as follows:

A. To the lenders holding liens in real property and equipment, the sum of approximately $6,285,000, in full satisfaction of such lenders' secured claims;

B. To Capital Crossing, the sum of approximately $215,000, in full satisfaction of its secured claim; and

9

C.     To BNPP, the payments under the Inventory Note and the remaining net sale proceeds, in partial satisfaction of its secured claim.

11.     All persons and related entities (including governmental, taxing and regulatory authorities) holding any lien, claim, encumbrance or judgment against the Subject Assets described above existing as of the closing of the sale described above, arising under or out of, in connection with, or in any way relating to, Olsen's, the Subject Assets, or the operation of Olsen's business prior to date of the closing of the sale described above, are hereby restrained and permanently enjoined from taking, asserting or prosecuting any action, whether now pending or not, to collect or enforce against OMAC, its property or its assets, including the Subject Assets, any such person's lien, claim, encumbrance or judgment existing as of the date of the closing of the sale described above.  As part of the closing of the sale described above, each person or entity holding or claiming a lien, claim, encumbrance or judgment is authorized and directed, as may be reasonably requested by the Receiver or OMAC, to execute such documents and take such actions as may be necessary to release any lien, claim, encumbrance or judgment on the Subject Assets, and such lien, claim, encumbrance or judgment shall instead attach to the proceeds of sale.

12.     This Court retains exclusive jurisdiction to interpret and enforce the provisions of this Order, the OMAC Offer, and to resolve any issues or disputes with respect to the sale by the Receiver of the Subject Assets and the administration of the remaining assets of the receivership estate.

13.     This is a final appealable order.

10

Dated this 27th day of April, 2009.

BY THE COURT:

Honorable William M. McMonigal
Circuit Court Judge

3729209_9

MHDocs 2064992_3 2577.65



EXHIBIT
A

OMAC OFFER 4-14-09

① $6.5 million for all real estate, rolli stock, and leased and owned equipment. Receiver has received $25,000. downpayment. Payment of the balance on or before April 24, 2009. OMAC has operating cash through West Pointe Bank.

② $9 million for all inventory, to be paid as sold, or within 180 days, whichever is earlier. Phillip J. Martini shall personally guarantee and provide a 180 day note (or should be interest) to the Receiver and BNP. OMAC will allow audit of inventory sales. Security from and obligations

③ OMAC will honor checks to producers, which DATCP has approved, including Littlesprout, in the amount of $4,974,000. (Current $1,596,830)

④ OMAC will honor all forward contracts of producers, in total amount of $4.5 million, which may fluctuate.

⑤ OMAC will honor prepaid inventory of producers in the amount of $25 million, which may fluctuate.

⑥ OMAC will honor all trade accounts payable, pre & post petition of $1.5 million exclusive of BBK, Receiver fees, lenders, Utica and Renews.

7. Receiver releases and discharges Phillip S. Martini and ONAC for any and all claims he may have as a result of the Receivership.

8. ONAC shall operate the business immediately upon Court Order.

9. ONAC will assume leases for equipment used in the ordinary course of business except rail car leases.

10. ONAC will offer employment to all employees.

11. Receiver agrees that he will forego and release any claims for pre-petition and preferential payments of the producers. Receiver may retain any other avoidance action.

12. Court will order the State DATCP to allow operations to continue under the current ONI license until ONAC has obtained its license. ONAC will immediately apply for the license.

13. ONAC will negotiate leases with Olsen Brothers Enterprises, LLP going forward.

-3-

14) OMAC will collect accounts receivable
as of 4/14/09 ~~as~~ ~~accrued~~ and allow
audit of the ~~bank~~ Remittance upon
collection in good funds (4 days)

Olsen's Mill Acquisition Company, LLC

by: _[signature]_

Phillip J. Martini, Sole Member

Waushara Co.



Parcel 8:
That part of the Southwest Quarter (SW 1/4) of Section Eight (8), Township Eighteen (18) North, Range Thirteen (13) East, Town of Aurora, Waushara County, Wisconsin, described as follows: Commencing at the intersection of State Trunk Highway 21 and State Trunk Highway 49; thence Northeasterly along the center line of S.T.H. #21, 525.0 feet to the place of beginning; thence Southeasterly parallel with S.T.H. #49, 263.0 feet; thence Northeasterly parallel with S.T.H. #21, 150.0 feet; thence Northwesterly parallel with S.T.H. #49, 263.0 feet to the center line of S.T.H. #21; thence Southwesterly along the centerline of said S.T.H. #21, 150.0 feet to the place of beginning; EXCEPT that portion conveyed for highway purposes.

Tax Key Number: 002-00833-1400
Property Address: W2003 State Road 21, Berlin, WI

Parcel 9:
Lot One (1) of Certified Survey Map No. 908 recorded in the Office of the Register of Deeds, Waushara County, Wisconsin in Volume 4 of Certified Survey Maps at Pages 1 and 2. This property was previously known and described as follows:
  A parcel of land in the Southwest Quarter (SW 1/4) of Section Eight (8), Township Eighteen (18) North, Range Thirteen (13) East, Town of Aurora, Waushara County, Wisconsin, lying North of the intersection of State Trunk Highway "21" and State Trunk Highway "49" and described as follows: Commencing at the intersection of the centerlines of said State Highways "21" and "49" as the point of beginning, thence Northeasterly along the centerline of S.T.H. "21", 498.0 feet, thence Northwesterly parallel with the centerline of S.T.H. "49", 515.0 feet, thence Southwesterly parallel with the centerline of S.T.H. "21", 498.0 feet to the centerline of S.T.H. "49", thence Southeasterly along the centerline of S.T.H. "49", 515.0 feet to the point of beginning, EXCEPT that portion conveyed for highway purposes.
  AND
  Commencing at the intersection of the centerlines of said State Highways "21" and "49", thence Northeasterly along the centerline of S.T.H. "21", 498.0 feet to the point of beginning; , thence continue Northeasterly along the centerline of S.T.H. "21", 84.0 feet; thence Northwesterly parallel with the centerline of S.T.H. "49", 515.0 feet, thence Southwesterly parallel with the centerline of S.T.H. "21", 84.0 feet; thence Southeasterly to the centerline of S.T.H. "49", 515.0 feet to the point of beginning; EXCEPT that portion conveyed for highway purposes., ALL located in the Southwest Quarter (SW 1/4) of Section Eight (8), Township Eighteen (18) North, Range Thirteen (13) East, Town of Aurora, Waushara County, Wisconsin.

Tax Key Number: 002-00833-0200
Property Address: W2018 State Road 21, Berlin, WI

Marquette Co.
Tax ID Nos: 018-00884-0000/ 018-00886-0000

**EXHIBIT**

C

PARCEL 1: Lot One (1) of Certified Survey Map No. 1241, as recorded in Vol. 6 of Certified Survey Maps, on Page 104, as Doc. No. 174904, being a part of the South One-Half of the Fractional Southwest Quarter (S1/2-Frac'l SW1/4) of Section 31, Township 17 North, Range 9 East, Town of Newton, Marquette County, Wisconsin.

PARCEL 2: A parcel of land located in the South Half of the Fractional Southwest Quarter (S1/2 Frac'l SW1/4) of Section 31, Township 17 North, Range 9 East, more particularly described as follows:

Commencing at the Southwest corner of said Section 31; thence N 89°22'02" E, along the South Line of said Section 31, 31.08 feet to the Easterly Right of Way Line of S.T.H. "51"; thence N 01°16'00" E, along said Easterly Right of Way Line, 1048.70 feet to the point of beginning; thence continuing N 01°16'00" E, along said East Right of Way Line, 270.10 feet to the East-West "40" line of the Southwest Quarter (SW1/4) of said Section 31; thence N 89°18'46" E, along said East-West "40" line, 1086.89 feet to the centerline of C.T.H. "E"; thence S 01°52'46" E, along said centerline, 270.00 feet; thence S 89°18'46" W, 1101.71 feet to the point of beginning.

Said parcel is subject to a Right of Way for road purposes over the Easterly 33.0 feet thereof.

EXCEPT that portion conveyed to the State of Wisconsin, Department of Transportation, by conveyance dated October 18, 1984, and recorded in the office of the Register of Deeds for Marquette County, Wisconsin, on November 15, 1984 in Volume 209 of Records, on Page 22, as Doc. No. 156392.

LESS AND EXCEPT: Lot One (1) of Certified Survey Map No. 1289, as recorded in Vol. 6 of Certified Survey Maps, on Page 152, as Doc. No. 176498, being a part of the South One-Half of the Fractional Southwest Quarter (S1/2-Frac'l SW1/4) of Section 31, Township 17 North, Range 9 East, Town of Newton, Marquette County, Wisconsin.

Parcel 3: Lot One (1) of Certified Survey Map No. 1289, as recorded in Vol. 6 of Certified Survey Maps, on Page 152, as Doc. No. 176498, being a part of the South One-Half of the Fractional Southwest Quarter (S1/2-Frac'l SW1/4) of Section 31, Township 17 North, Range 9 East, Town of Newton, Marquette County, Wisconsin.

Winnebago CO.
Tax ID NOS. 265-0514, 265-0515, 265-0516, 265-0517


EXHIBIT

D

PROPERTY ADDRESS: W. Huron Street, Omro, WI

PROPERTY DESCRIPTION:
Lots Forty-one (41), Forty-two (42), Forty-three (43) and Forty-four (44) in WESTN ADDITION to Town Plat of Omro, in the City of Omro, Winnebago County, Wisconsin.

Portage CO.



**EXHIBIT**

**E**

**Parcel 6:**
A parcel of land located in Government Lot Twenty-three (23), Section Thirty-one (31), Township Twenty-four (24) North, Range Nine (9) East, of the 4th Principal Meridian, Portage County, Wisconsin, described as follows:
Commencing at the point of intersection of the East line of said Government Lot Twenty-three (23) and a line parallel with and 50 feet normally distant Northerly from the centerline of Wisconsin Central, Ltd, a Chicago Illinois to Minneapolis, Minnesota Main Track; thence Westerly along the last said parallel line a distance of 436 feet to a point on the Southwest corner of a parcel of land conveyed by Soo Line Railroad Company to R. Firkus by deed dated January 3, 1975, and the true point of beginning; thence Northerly parallel with the East line of said Government Lot Twenty-three (23) a distance of 300 feet; thence Westerly parallel with said Main Track centerline a distance of 439 feet; thence Southerly at right angles to said Main Track centerline a distance of 300 feet, more or less, to a point on a line parallel with and 50 feet normally distant Northerly from said Main Track centerline; thence Easterly along the last said parallel line a distance of 439 feet, more or less, to the true point of beginning. TOGETHER with and subject to easement described in Volume 644 of Micro-Records, on

page 933, in Volume 671 of Micro-Records, on page 876 and as Document No. 578388, also subject to easement in Volume 344 of Micro-Records, on page 150.
Tax Key No.: 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:23.13

**Parcel 7:**
Lot One (1) of Certified Survey Map No. 6352-23-175, recorded in the office of the Register of Deeds for Portage County, Wisconsin on September 26, 1996, in Volume 23, of Surveys, on Page 175, as Document No. 516216; being all of Lot One (1) of Certified Survey Map No. 3329 and part of Certified Survey Map No. 2581, located in parts of Government Lots Twenty-three (23) and Twenty-four (24), Section Thirty-one (31), Township Twenty-four (24) North, Range Nine (9) East, Town of Stockton, Portage County, Wisconsin. TOGETHER with easement described in Volume 644 of Micro-Records, on page 937, in Volume 671 of Micro-Records, on page 876 and as Document No. 578388, also subject to easement in Volume 344 of Micro-Records, on page 150.
Tax Key No.: 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:23.14

**Parcel 8:**
OutLot One (1) of Certified Survey Map No. 6352-23-175, recorded in the office of the Register of Deeds for Portage County, Wisconsin on September 26, 1996, in Volume 23, of Surveys, on Page 175, as Document No. 516216; being all of Lot One (1) of Certified Survey Map No. 3329 and part of Certified Survey Map No. 2581, located in parts of Government Lots Twenty-three (23) and Twenty-four (24), Section Thirty-one (31), Township Twenty-four (24) North, Range Nine (9) East, Town of Stockton, Portage County, Wisconsin.
AND
OutLot One (1) of Certified Survey Map No. 7520-27-200, recorded in the office of the Register of Deeds for Portage County, Wisconsin on September 29, 2000, in Volume 27, of Surveys, on Page 200, as Document No. 579081; being part of Lot One (1) of Certified Survey Map No. 2581, located in part of Government Lot Twenty-four (24), Section Thirty-one (31), Township Twenty-four (24) North, Range Nine (9) East, Town of Stockton, Portage County, Wisconsin.
Tax Key No.: 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:23.16



**EXHIBIT**

F

**Property Address:** 2550 Clairville Road

**Tax Key Number:** 002-0413

**Legal description:** The South West ¼ of the SOUTH WEST ¼ of Section 32, T18N, R16E, in the Town of Algoma, Winnebago County, Wisconsin, excepting therefrom the four (4) following described tracts of land, viz:

1. Commencing at the Southwest corner of said Southwest ¼; thence East, along the South line of said South West ¼, 2 rods; thence northwesterly to the Northwest corner of said South West ¼ of the South West ¼; thence south, along the West line of said South West ¼ of the South West ¼, to the place of beginning.

2. That portion thereof lying south and east of the Northwesterly line of the former right-of-way of the Chicago, Milwaukee, St. Paul and Pacific Railroad.

3. That portion thereof heretofore conveyed to Winnebago County for roadway purposes by Instrument recorded in Volume 1071 on Page 447.

4. That portion thereof heretofore conveyed to the State of Wisconsin Department of Transportation by Deed recorded in Document No. 1248967.

# SCHEDULE 1.6

## REAL ESTATE

OLSEN'S MILL, INC.
LEGAL DESCRIPTIONS

| TOWN | COUNTY | PARCEL # | DESCRIPTION | ACRES | CITY | LEGAL DESCRIPTION | OWNED BY |
|------|--------|----------|-------------|-------|------|-------------------|----------|
| Algoma | Winnebago | 002-0413 | 2550 Clairville Rd | 27.220 | Oshkosh | PT SW SW LYG N & W OF RR EXC SW COR POB E 2 RDS N TO NW COR S ALG W LN TO POB & EXC HWY-D1248907-01A | OMI |
| Aurora | Waushara | 002-00833-0200 | W2018 St Rd 21 | 5.166 | Berlin | 290/370 290/369 SEC 68, T 18 N, R 13 E PT OF SW1/4 SW 1/4, LOT 1 CSM #908 | OMI |
| Aurora | Waushara | 002-00833-1400 | MAIN OFFICE C25 W2003 SR 21 | 0.730 | Berlin | 847/817 742/160 SEC 68, T 18 N, R 13 E PAR IN SW1/4 150' X 213' | OMI |
| Newton | Marquette | 018-00884-0000 | NEWTON | 1.000 | Westfield | SEC 31, T 17 N, R 09 E, SE1/4 OF SW1/4 PRT OF S 1/2 OF SW 1/4 LY W OF CO RD E 1.00A | OMI |
| Newton | Marquette | 018-00886-0000 | N7061 Co Rd E | 9.000 | Westfield | 298/22 SEC 31, T 17 N, R 09 E, SE1/4 OF SW1/4 PRT S1/2 OF SW1/4 INCL LOT 1 CSM 1241 & LOT 1 CSM 1289 9.00A | OMI |
| Omro | Winnebago | 265-0514 LOT 41 | | | Omro | W HURON ST 18/18/15 WESTERN ADD LOT 41 | OMI |
| Omro | Winnebago | 265-0515 LOT 42 | | | Omro | W HURON ST 18/18/15 WESTERN ADD LOT 42 | OMI |
| Omro | Winnebago | 265-0516 LOT 43 | | | Omro | W HURON ST 18/18/15 WESTERN ADD LOT 43 | OMI |
| Omro | Winnebago | 265-0517 LOT 44 | | | Omro | W HURON ST 18/18/15 WESTERN ADD LOT 44 | OMI |
| Stockton | Portage | 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:23.14 | 2417 Stockton Rd | 5.370 | Stevens Pt | LOT 1 CSM#552-23-175 BNG PRT GL 23 & 24 553/458&ESMT DE5-578388 S31 T24 R 9.23.14 5.6.37A CSM 23/175;583/457 ASMT INCS PRCLS:23.13&23.19 | OMI |
| Stockton | Portage | 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:23.13 | | | | PT GL23 BNG 330' STRIP ADJ NL RR33/306;EX E 436'SUBJ20'ESMT344/150;644/933EX W450';SUBJ ESMT578368 3.00A M/L 677/520-2;879/514 684/457ESMT ASSD W/23.14 | OMI |
| Stockton | Portage | 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:23.18 | | | | OL1 CSM23/176&OL1 CSM 27/200 BNG PT GL23&24 SUBJ RSV ESMT-583/457;683/235-ESMT TERM&ESMT 578386.40A 671/976; CSM23/176&27/200;579115ASSD W/PRCL:23.14 | OMI |

*PRINT in BLACK ink*

| | |
|---|---|
| Enter the name of the county in which this case was filed. | **STATE OF WISCONSIN, CIRCUIT COURT,**<br>**WAUSHARA**_____ **COUNTY** |

*For Official Use*

**FILED**<br>MELISSA M. ZAMZOW<br>JAN 12 2011<br>CIRCUIT COURT<br>WAUSHARA CO. WIS.

| | |
|---|---|
| Enter the Plaintiff's name. | Plaintiff(s):<br>PAUL OLSEN AND DAVID OLSEN _____<br> First name       Middle name       Last name |
| Enter the Defendant's name. | -vs.-<br>Defendant(s):<br>AG SERVICES OF WISCONSIN, L.L.C. _____<br> First name       Middle name       Last name |
| Enter the case number. | |

**Stipulation and Order for Dismissal (Eviction)**

Case No. 10 SC 555 _____

## STIPULATION

The parties who have signed this stipulation agree that this case shall be dismissed as follows:

| | |
|---|---|
| For 1, check either A or B<br><br>If 1A, enter the date and time that the defendant(s) agree to move out of the premises.<br><br><br>If 2, check either A or B.<br><br>If 2A, enter the amount and explain the payment agreement, if any, between the parties. Include payment amount( and due date(s). Be specific.<br><br>**NOTE:** If there is additional information about the agreement, chec the box and attach additional pages to this document.<br><br>Enter the grace period (number of days) for payment.<br>Check either 2.A.1 or 2.A.2. If 2.A.2, fill in the amount. | **1. Agreement to Vacate Premises:**<br>    A. ☐ The defendant(s) will vacate the premises by (date) _____ at (time) _____.<br>        If the defendant(s) fail to vacate the premises by this date, the plaintiff(s) may, without notice to the defendant(s), ask the court to set aside the dismissal and enter judgment against the defendant(s) for restitution (return) of the premises, plus costs and disbursements, and issue a writ of restitution.<br>    B. ☒ No agreement to vacate was entered.<br><br>**2. Payment Agreement:**<br>    A. ☐ The defendant(s) shall pay the plaintiff(s) the amount of $ _____ in full settlement of this case in the following manner:<br><br>        _____<br>        _____<br>        _____<br>        ☐ **See attached** for additional information.<br><br>        If the defendant(s) misses any scheduled payment by more than _____ days, the plaintiff(s) may file an Affidavit of Noncompliance (SC-5400V) without notifying the defendant(s), and ask the court to vacate the dismissal, enter a judgment for eviction, issue a writ of restitution, and:<br>        ☐ 1. Schedule a hearing to determine the amount of a judgment against the defendant(s), or<br>        ☐ 2. Enter a money judgment against the defendant(s) in the amount of $_____, plus costs and disbursements, minus any payments made.<br><br>    B. ☒ No payment agreements have been made. |



**EXHIBIT**

**3. Other Agreement:**

For 3, check either A or B.

   A. ☒ We have made the following other agreements:

This Matter Should Be Dismissed Due To The Fact It Was Filed On The Wrong Property And In The Wrong County.

If 3A, describe the other agreement made between the two parties.

**NOTE:** If there is additional information about the agreement, check the box and attach additional pages to this document.

☐ **See attached** for additional information.

If either party does not or cannot comply with the terms of this agreement, either party may file a written request with the court for a hearing.

   B. ☒ No other agreements have been made.

_____
Plaintiff Signature

Have the Plaintiff sign **and** print his/her name.

John B. Selsing
_____
Print or Type Name

Enter the date on which the plaintiff signed his/her name.

12-29-10
_____
Date

**Note:** This signature does not need to be notarized.

Have the Defendant sign and print his/her name.

X _____
Defendant Signature

Enter the date on which the defendant signed his/her name.

X Thomas M. Olejniczak, ATTY
_____
Print or Type Name

**Note:** This signature does not need to be notarized.

12-30-10
_____
Date

**THE COURT ORDERS:**

Subject to the above agreement, this case is dismissed.

_____
Circuit Court Judge/Court Commissioner

**For Court Use Only**

W. M. McMONIGAL
_____
Print or Type Name

1/10/11
_____
Date

**COPIES:** Make one copy for each party. Bring the original and the copies to the clerk of court.

SC-5300V, 10/07 Stipulation and Order for Dismissal (Eviction)          §799.24(3), Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.
Page 2 of 2
Case 10-39799-svk    Doc 33-1    Filed 01/21/11    Page 25 of 27

STATE OF WISCONSIN, CIRCUIT COURT, ~~STEVENS POINT~~ PORTAGE COUNTY

| | | For Official Use |
|---|---|---|
| Plaintiff: (Name [first, middle, last], Address, City, State, Zip) | | |

PAUL AND DAVID OLSEN
2009 MAJESTIC PINES
WAUTOMA, WI 54982

☐ See attached for additional plaintiffs.

-vs-

To: Defendant(s): (Name [first, middle, last], Address, City, State, Zip)
AG SERVICES OF WISCONSIN L.L.C.
W2003 HWY 21
BERLIN, WI 54923

☐ See attached for additional defendants.

If you require reasonable accommodations due to a disability to participate in the court process, please call _____ at least 10 working days prior to the scheduled court date. Please note that the court does not provide transportation.

☐ Amended

**Summons and Complaint**
**Small Claims**

Case No. 10 SC 1__

☐ Claim for money ($5,000 or less)   31002
☐ Return of property (replevin)   31003
☒ Eviction   31004
☐ Eviction due to foreclosure.   31202
☐ Arbitration award   31009
☐ Return of earnest money   31008

### SUMMONS

**To the Defendant(s):**
You are being sued as described below. If you wish to dispute this matter:
☒ You must appear at the time and place stated.
   **AND/OR** (Clerk will circle one)
☐ You must file a written answer and provide a copy to the plaintiff or plaintiff's attorney on or before the date and time stated.

If you do not appear or answer, the plaintiff may win this case and a judgment entered for what the plaintiff is asking.

Clerk/Attorney Signature

| When to Appear/File an Answer | |
|---|---|
| Date 1/11/11 | Time 9:00 A.M. |
| Place to Appear/File an Answer | |

PORTAGE COUNTY COURTHOUSE
COUNTY CITY BUILDING
1516 CHURCH STREET   BR 2
STEVENS POINT WI 54481

| Date Summons Issued | Date Summons Mailed |
|---|---|
| 12/13/10 | RFS |

Portage County
**FILED**
DEC 1 3 2010
BERNADETTE A. FLATOFF
CLERK OF COURTS

**Plaintiff's Demand:**
The plaintiff states the following claim against the defendant(s):
1. Plaintiff demands judgment for: (Check as appropriate)
   ☐ Claim for Money $ _____
   ☐ Return of Earnest Money        ☒ Eviction        ☐ Eviction due to foreclosure
   ☐ Return of property (replevin) (Describe property in 2 below.)   ☐ Confirmation, vacation, modification or
      (Not to include Wis. Stats. 425.205 actions to recover collateral.)      correction of arbitration award.
   Plus interest, costs, attorney fees, if any, and such other relief as the court deems proper.

2. Brief statement of dates and facts: (If this is an eviction action and you are seeking money damages, you must also state that claim on this form.)
   Defendant was personally served a 14-Day Notice Terminating Tenancy, Affidavit of Service on File with County.
   Requesting that defendant be evicted from Brock Grain Bin located at 2417 Stockton Road, Stevens Point, WI in the NE 90'
   Further requesting that plaintiff be awarded court costs and attorney fees in bringing this action.

☒ **See attached for additional information.** Provide copy of attachments for court and defendant(s).

**Verification:** Under oath, I state that the above complaint is true, except as those matters stated upon information and belief, and as to those matters, I believe them to be true.

I am: ☐ plaintiff.  ☒ attorney for the plaintiff.

| Subscribed and sworn to before me On DECEMBER 7, 2010 | Signature of Plaintiff or Attorney | Date 12/7/10 | Attorney's State Bar Number 1014654 |
|---|---|---|---|
| Notary Public, State of Wisconsin My commission expires: 07-24-10 | Plaintiff's/Attorney's Telephone Number 920-361-4100 | Law Firm and Address SELSING LAW OFFICE 120 EAST HURON STREET BERLIN WI 54923 | |

SC-500, 10/09 Summons and Compliant – Small Claims
This form shall not be ~~modified~~ with additional material.

Chapter 799, Wisconsin Statutes


EXHIBIT
D

Case 10-39799-svk    Doc 33-1    Filed 01/31/11    Page 26 of 27

## FIVE DAY
# Notice To Pay Rent or Vacate

1  To __AG SERVICES OF WISCONSIN LLC__

2  # State of Wisconsin,

__W2003 HWY 21__

3  GREEN LAKE _____ County.

__BERLIN, WI   54923__

4      This notice terminates your tenancy and requires you, and anyone living with you, to vacate the premises
5  listed above on or before __January 19__, 20 __11__, unless you pay the unpaid rent of
6  $ _____ before the date listed above.

01/14/2011

7  Description of premises:

8
9  __Property located at: 3875 Crop Care Court,__
10  __Amherst Junction, WI  54407__

1140 AM

11  **Past Due Rent:**        Amount                  Date Rent Was Due

| | Amount | Date Rent Was Due |
|---|---|---|
| 12 | $5,000.00 | 10/01/10 |
| 13 | $5,000.00 | 11/01/10 |
| 14 | $5,000.00 | 12/01/10 |
| | $5,000.00 | 01/01/11 |

15      If you have not vacated the premises by the date listed above the owner may start an eviction action
16  against you pursuant to chapter 799 of the Wisconsin Statutes.

17      **DOUBLE RENT:** Pursuant to §704.27, Wis. Stats. an owner can recover as damages against a tenant, a **minimum of**
18  **twice the daily rent amount,** if the tenant remains in possession of the premises after the expiration of this notice.

19  Date: 01-14-2011

20        **When To Use:**
21  (1) Month-to-month tenancy where tenant has failed to pay rent; or
22  (2) Tenancy for 1 year or less where tenant has failed to pay rent.

Owner / Agent of Owner
John B. Selsing, Attorney for
Paul and David Olsen

2/19/03 - Drafted by Attorney Tristan R. Pettit & Thomas Frenn of Petrie & Stocking S.C.
© 2003 Wisconsin Legal Blank Co., Inc.

**EXHIBIT**
E